Which one is it? Wilding et al. versus DNC Services Corporation et al. Mr. Beck, we'll start with you. Thank you, Your Honor. Good morning. Jared Beck, Beck and Lee on behalf of the appellants. For purposes of establishing the injury necessary for Article III standing, the Supreme Court has held that even a monetary trifle is sufficient. In this case, the plaintiffs who were donors to Bernie Sanders' 2016 presidential campaign lost far more than a trifle when they paid more than $228 million in donations to his campaign, believing that he was participating in an impartial, fair, and even-handed primary process, as guaranteed by the DNC's own charter and repeated in multiple statements in the press by the DNC's employees, including defendant Wasserman Schultz. But there's a second path to standing in this case, in addition to the payment of money, which has been called the classic form of Article III standing. And that second path is the fact that common law rights were violated, as we alleged in the complaint. In addition to claims based on fraud, negligent misrepresentation, unjust enrichment, there's a claim for breach of fiduciary duty. Well, let's start there, Mr. Beck. Let's assume the district court got it wrong on Article III standing. What injury did your clients, the named representatives, suffer from an alleged breach of fiduciary duty? The complaint doesn't say. That's correct. The complaint does not, with respect to the fiduciary duty claim, spell out the nature of the damages, but I believe those damages- No, it's not damage. It's injury, period. It's not that you say we were monetarily damaged and didn't put a dollar figure on it. It doesn't explain the nature of the injury at all. Right. Isn't that a problem for you? Well, I think the nature of the injury is the injury that any member of an organization suffers when the caretakers of that organization, be it the trustees or the directors or whoever is responsible for managing the affairs of the organization for its members, fail in their fiduciary duty. Go ahead. We're probably going to say the same thing. That sounds a little bit circular. If anything, maybe some sort of psychic injury, which is clearly not enough. Well, I don't think it's a psychic injury to the extent that the Democratic Party is a real organization with real members. And I think that may be some of what is at issue in the way this case has been brought to issue thus far. But I don't think that the Democratic Party is abstract a notion as the DNC has suggested throughout this litigation. I believe it is a real organization in which people are members. I believe that the DNC's own charter speaks of the Democratic Party as such. And so from the perspective of the fiduciary duty claim, it would be our position that it is analogous to breach of fiduciary duty in any context when you're dealing with an organization, be it a corporation. And the DNC is a private corporation, although the Democratic Party, in our view, as an organization, stretches farther than that. But whenever there is an organization with members and trustees of that organization, when they fail to make good on their fiduciary duties, they cause an injury to the membership. What is that injury? Well, I think it can be quantified in a number of ways. I think one is it reduces the value of the organization. The DNC has filed and is litigating a lawsuit against Russia and Wikileaks and other parties in which it is alleging and maintaining the allegations that due to the Russian hacking or what they allege to be Russian hacking of their documents, donations have gone down. So when... You're bootstrapping the DNC's own financial issues to your client's injuries for breach of fiduciary duty by the DNC itself? Well, I don't know if it's bootstrapping so much as identifying an area of palpable injury. To your client as opposed to the DNC? Well, I think to the extent that the DNC is the organization that's responsible for managing the Democratic Party of which my clients are members, then it is identifying how that organization, at least in a very hard monetary sense, and I do believe there are other senses as well, but... Well, what are the other injuries? You said they reduced the value to the DNC. You've said that there's injury because the leaders failed to satisfy their fiduciary duties. What are the other duties flowing from any breach of fiduciary duty? Well, I think that they are reducing the viability of the organization as a political organization in the domain of American domestic politics in the long run. Also... And so... Also... If the leaders of an organization that are charged with holding fair and even-handed primaries fail to do so, they fail to conduct the party as a viable source of democratic engagement, and I think over the long run they reduce their viability as a viable political party in the system. Any other injuries besides the leaders failing to satisfy their fiduciary duty, reducing the value of the DNC, and reducing the viability of the political organization? Well, I think reducing the value of the DNC monetarily would also encompass the Democratic Party more broadly defined. Okay. Okay, let me ask you this question. Staying on that breach of fiduciary duty claim, what authority is there anywhere in the country for the proposition that any state's common law recognizes a fiduciary relationship between a political party and its nationwide members? The cases that we found are limited to New York cases and New York party members. Which is different because those are cases in which the party was deemed to have controlled the political apparatus of a certain county. They ran all the offices. They basically had a stranglehold on everything, and in a decision that has been much criticized, the Second Circuit said there's a fiduciary duty for purposes of the honest services provision of the fraud statute. But this is a far-ranging obligation that you're asking us to impose without really any precedential support. So any person that signs on as a member of the Democratic Party or the Republican Party or the Independent Party or the Libertarian Party, any party whatsoever, anywhere in the country, is owed a fiduciary duty by that party with all of its attendant obligations. And a breach is actionable for damages. That's the sort of principle you want us to adopt? Well, Your Honor, let me answer the question first on the question of New York state precedent. I think those cases do reflect an earlier time in this nation's politics, and that's why you see those cases germinate in the earlier part of the 20th century when there was an extraordinary amount of local control, I think, exerted in the nation's elections, and the local parties were the site of the action, so to speak. I think in the interim, our nation's politics have become radically transformed, and I think they've become quite nationalized. And I believe that the DNC and its counterpart, the RNC, have in this radical transformation adopted quite a position of force and influence over the entirety of the National Democratic Party consisting of its constituent parts that it does make sense to adopt a precedent such as that, because this is the situation to which our nation's politics has evolved. You want the federal and state courts of this country to solve disputes between warring factions of national political parties. So if someone thought that the DNC, instead of, as you alleged, favoring Ms. Clinton in the primaries, had not done enough to favor Ms. Clinton in the primaries given the view of some that she was going to be the eventual nominee, they could also sue the party for breach of a fiduciary duty. And if someone thought that the amount of money that the Democratic National Party devoted to the Sanders campaign or the Clinton campaign was insufficient and was ill-thought-out, they could sue for breach of a fiduciary duty. Right? Those are all possibilities in your mind? Well, Your Honor, I think— That's the sort of regime that you would like us to adopt. I'm very skeptical that that is a good thing, generally speaking. I know we're not here to do good in terms of common law, but you don't have any precedent that you can cite to, either in the District of Columbia or in Florida, that goes anywhere close to what you're asking us to do.  Well, Your Honor, I think we're at a point in the nation's political history, for better or worse, where the courts of this country have radically altered the conduct of politics in this country through Citizens United, which people may agree or disagree with it, but that's a decision which has validated a political system in which the nation's political parties exist to attract as many dollars as possible into these campaigns. But your case doesn't depend on the allegation that funds were derived or directed toward the Clinton campaign as opposed to the Sanders campaign. There are no allegations of that kind in your complaint, right? There don't need to be allegations of that kind. I don't disagree with you. I'm just saying if you're going to pivot over to Citizens United, this is not a case about the improper diversion of the coffers of the Democratic Party, right? Well, I mean, we haven't gotten to discovery, quite frankly, to know the full answer to that question, but as pled, you're correct, Your Honor. It's not a case within those parameters, but what it is a case about is the payment of a substantial amount of money based on false representations and omissions that were made to people believing that they were participating in the political process as Citizens United directs us to participate in the political process by setting up this framework in which the donation of money to political campaigns is the exercise of First Amendment rights with respect to the political realm, and so my clients were doing as they've been, I would say, directed to do by the courts of this country insofar as they're participating in a political process by opening their pockets to a political campaign, believing that political campaign was participating in a fair and impartial process. You've asserted fraud claims and negligent misrepresentation claims, and I think those are where your point about the donations has more of a nexus, and I've been asking you just about the breach of fiduciary duty claim, which seems to me to sit on a whole different footing, but that's just my perspective. I agree it does sit on a whole different footing. You're absolutely right, Your Honor. I do think that the flow of money that occurred in connection with the fraud-related claims are related to the breach of fiduciary duty claims because I do believe that financial arrangements, including what specific financial arrangements the party had with the campaigns, something we didn't get into in the complaint because we didn't have that information at the time we drafted that complaint, but I think those issues would be potentially relevant to the breach of fiduciary duty claim. You mentioned statements that the DNC had made or various people had made. Did you allege any statements upon which your clients relied in your complaint? We did not allege specific reliance on any given statement by any of our clients, but we did allege for each of the fraud-related counts that our plaintiffs relied on the misrepresentations and omissions that were made by the defendants. Isn't there a special particularity requirement for fraud?  So why do you think that your allegations are sufficient under 9b? Because I think the nature of the fraud here goes beyond those specific statements or even the charter obligation under Article V, Chapter 4 of the DNC's charter. I mean, the concept that elections are run in a fair and even-handed manner in this country is something that's inculcated from birth, or not from birth but from our earliest days in the education system, and so I think that this is as much a case about omission as it is about affirmative misrepresentation, and so I think we did satisfy the particularity requirement because we identified specific instances of affirmative statements that the DNC's chairwoman made which reaffirmed their general concealment of the fact that they were favoring one candidate in this primary. I have one more question for you. I can understand the notion that those who contributed, as you call them, the DNC donor class might have some connection to what you say are misrepresentations by the defendants, but with regards to what you call the Sanders donor class, how were they misled if they contributed directly to Senator Sanders' campaign and not to the party as a whole so that the Sanders campaign would have conceivably used the funds as it thought best, and how were your clients defrauded in any way, at least those in the Sanders donor class? The issue is that the DNC was responsible for running the primary process, so it was their concealment as well as their affirmative misrepresentation of the fact that they were running the primary process in a fair and even-handed way that was critical to the decision of people to donate to the Bernie Sanders campaign. I mean, it would be like if they didn't did the Sanders campaign didn't mislead them according to you, and they donated to the Sanders campaign. So how were they defrauded in any way that's logically connected to their donation? Well, they're defrauded by the DNC, which made the representations and omissions regarding the impartiality of the process, and that's why we've named the DNC as a defendant. And we would submit that the DNC stands to gain not just from donations that are made to it directly, but by donations that are made to any of the candidates that are competing. And it was not going to favor, and that it was deliberately trying to sink. Yes, Your Honor, those donations were. Well, I think it does make sense when you consider that of the $228 million that went to Sanders, how much of that went right into the political economic ecosystem and into the pockets of consultants and others who make their living off of campaigns. And so these people are highly connected to the DNC, and I think at the end of the day these people, the DNC benefits from having lots of money enter into an election process from all different sides, even though in this case it, in our view, favored one candidate from the very beginning. Okay, Mr. Beck, thank you so much. Thank you, Your Honor. You've saved your time for rebuttal. Thank you very much. Mr. Spiva? Thank you, Your Honors, and may it please the Court, my name is Bruce Spiva from Perkins Coie, and I represent the DNC and Congresswoman Wasserman Schultz. Your Honors, for the majority, the vast majority of Democratic voters and the candidates themselves, the 2016 primary election ended on July 12, 2016, when Senator Sanders conceded the nomination to Secretary Clinton and endorsed her for the nomination. Secretary Clinton had received nearly 4 million more votes than Senator Sanders during the primary campaign. However, for a group of Sanders supporters, some of whom are represented in this lawsuit, the primary battle continues in the form of this lawsuit that seeks to drag the federal courts into an internal party dispute and to impose a patently unconstitutional injunction on the Democratic Party, requiring it to select its presidential standard bearer in a certain way. More, it seeks to impose devastating monetary damages, which the plaintiffs allege in their complaint are meant to send a message to the party. I have a question. Would their complaint have any more value if they had evidence that the DNC had been secretly supporting, say, Trump or Rubio? Would that make a difference? You know, certainly not this case, Your Honor, but it took me a minute to wrap my mind around that. I'll admit that... It's a hypothetical. Yeah, that hypothetical. And so I appreciate the hard question, Your Honor, but no, I don't think it would make a difference. I think if you had a situation where the DNC were to say to donors, if you give to us money, we're going to spend it to try to elect our nominee to the presidency, and that it actually secretly funneled that money to the Trump campaign, I think that would present a very different scenario and might actually make out a claim for actionable fraud. But here you have something very different, Your Honor. What you have is you have a portion of the charter of the Democratic Party that says that the chair, then Congresswoman Wasserman Schultz, will conduct the primary campaign in an impartial and even-handed manner. And the party contends that it did just that and that the chair will ensure that other officers and employees of the DNC will do the same thing, that they will conduct the primaries in an even-handed and impartial manner. Okay, so you have a complaint that says that they failed to do that. And because we are here on a motion to dismiss, the district court granted our motion to dismiss, we have to assume that that is accurate. I hasten to add because after the argument in the district court, despite having said about five times that the DNC and Congresswoman Wasserman Schultz denies that allegation all over social media, part of it fomented, I have to say, by counsel. There was all this information about the DNC's lawyer admits that the DNC lied, admits that they ran the campaign in an unfair manner. Not true. We deny it. But we have to assume on a motion to dismiss that that's the case. So what would the federal courts have to do if they granted the relief that the plaintiffs are seeking? One, they'd have to figure out who actually is what they're referring to as a registered member of the Democratic Party. Counsel is wrong. There is a definition of membership, but it's actually much narrower than what he talks about. It talks about certain representation from the states and certain elected representatives. The party is obviously trying to get as many people around the country to vote for it as possible, but that's not the definition that could be applied by the court. Secondly, the court would then have to decide, what does it mean to be impartial and even-handed? These are not self-defining terms. Yeah, if I tell you I'm going to spend money on behalf of Secretary Clinton and I go and spend it on behalf of Donald Trump, that's perhaps something that a federal court or a state court, for that matter, could adjudicate and determine whether or not it is true. But to determine what it means to be even-handed and impartial, that's quite another thing and drags this court, I submit, into what I would call a church fight. And we all know that courts cannot involve themselves into matters of theology, nor can they under O'Brien and La Follette and any number of cases submitted in our brief get involved in determining whether or not the party has been fair enough. Justice Feivel, let me ask you a question, please. Sure. Didn't the district court improperly mix standing with merits? No, Your Honor. In other words, it said you don't have any injury because you can't recover because there's no claim available to you and nobody owes a duty to you. You're supposed to keep the merits separate from standing, right? And for purposes of a fraud claim, standing only, they allege that, and again, putting aside the particularity pleading requirements on the substance of the claim, they claim that they made a donation, at least some of them, made a donation based on representations. Not accurate, Your Honor, the second part of what you just said. No, they do say they relied. You may think that's insufficient as a matter of law under 12b-6, but they say they relied, right? There are no particularized allegations with respect to any individual plaintiff that they even heard the statements, let alone relied. They allege that they relied. There are two paragraphs in the complaint, Your Honor, in which they say generally that plaintiffs relied upon the statement. That's the type of insufficient. That's my point. Yes, right. They claim reliance. That's insufficient under both 12b-1 and 12b-6, Your Honor. Well, I'm not sure about 12b-1. But they claim that they made a donation, that they relied, right? And they allege that at least in part, or they request at least in part, that their donations be refunded to them. How is that not injury, causation, and redressability? I'll take them one at a time, Your Honor. And I do think that in some instances here, they don't have standing for the same reason that their claim would fail if you got to it. I don't think that that was improper of the district court to – because if you have not articulated an injury, you don't have standing. If it's an injury that can't be redressed by this court, you don't have standing. But also, if you don't allege damages, you can't make out a claim of negligence. If you allege in a fraud claim that you gave money to somebody based on a misrepresentation that you relied upon, how is that not injury for Article III purposes? I have to dispute the premise, Your Honor, because there is no allegation in the complaint that any of these plaintiffs even heard these representations, much less relied on them. You can't rely unless you've heard, right? Right. And none of them alleged that they heard or relied. You just told me that they say, although you think it's a blanket and conclusory statement. Boilerplate, Your Honor. Yes. That's always a defense characterization of a pleading. I'm a plaintiff's lawyer usually, Your Honor. It's good to switch off and on. But I have no boilerplate when I see it. Okay. I'm sorry. How can that not be injury? If you don't have reliance, you may not have shown causation. But how can the loss of money not be injury in fact under Article III? Because they have made no allegations connecting. That's causation. Yes, which is part of the standing analysis. Yes, but it's not injury. And the district court said no injury to at least some of the claims. Right. We not only have to figure out how to decide this case but how to do that. Right. It's their burden to properly plead standing. And a boilerplate allegation that all of the plaintiffs relied upon these statements when you have no specific allegation that they even heard them, let alone relied upon them, is insufficient under Iqbal and Twombly as a standing matter. So that's causation, not injury. Well, it's injury as well. Why? Because if they didn't make the donation because of something that— No. Those are separate things. You can't link those things. They're separate inquiries. They have departed with their own money. Right. That is a financial loss or detriment. But they can't show reliance if they didn't even— Then there's no causation. Yeah. Okay. So the district court got injury in fact wrong on some of the claims. Right. Well, in addition— Yes or no? Sorry. No, it did not. It did not get it wrong because in addition to the reason I was giving a minute ago, it also found that the injury that they were articulating is way too generalized. How can your loss of your own personal donation be too generalized? That doesn't make any sense to me. For some of the claims. I'm not saying all of them. If you say I gave $30, I was defrauded, how can that not be injury to you? You may lose on causation. You may lose on regressibility. You may lose on lack of particularity. You may lose on a whole host of other things. But how can that not be injury in fact? Right. A, I would say, yes, you lose on all those other things as well. But B, what I would say is if the reason you're saying I was defrauded out of that money is because I wouldn't have given— You're going to the merits of the fraud claim. No, I'm not, Your Honor. Yes, you are. You're trying to show reasonable reliance. No, I'm trying to show generalized injury because you don't have a right to dictate how the party runs the organization and how it applies. That's merits. It's also standing, Your Honor. No, it is not. Because it's too generalized. You cite me a case that links those two things that way and mixes them up. Lujan. Lujan v. Wilderness, Your Honor. Let me give an example because one of the things they say is that— Lujan, there was no injury because there weren't sufficient allegations that the individuals there, if I remember the case correctly, would return to foreign lands to look at the animals who might have been impacted by the United States agency's monetary decision on a grant. Well, this is just as bad because— This is past injury, not prospective forward-looking injury. If I might, Your Honor, they're saying that the party did not run itself properly. It didn't interpret and implement its own charter properly. If that's the case, we deny it. If that's the case and that is their injury, that's the source of their injury because they're saying if they had run it properly, I wouldn't have given any money. That's an injury that they share. No, they said if they wouldn't have told me they were running it properly, I wouldn't have given any money. Right, but you have to determine whether or not they actually ran it properly in order to determine— That's merits. Yeah, but it's also standing because it's something that they share with not only every person who gave to the Democratic Party but also— No, that can't be right, Mr. Spivo. So you and I are going to have an issue on this one. If there's mass fraud and 20 million people are defrauded and they all have the same injury because they all donated $25 based upon a fraudulent misrepresentation that they were donating to a charity, that's generalized injury? No, but the reason— What's the difference? The reason is that here if you had a charity that said, look, you give us $25 and we're going to go feed hungry children and the executive director then pockets the money and takes it away, that's fraud. That's injury. I would concede that. Why is that injury? What injury did the donors suffer? Because they were told that the money was going to be— No, no. What injury did they suffer? They suffered the loss of their money. OK. That's the same so far as the donors here, right? No, it's different, and this is why. Because if the person said, look, we're going to try to help children and we're going to do it in a certain way. We're going to go out and we're going to talk to schools and we're going to meet with kids. And the donor said, I think that's not good enough. That's actually not the best way to help children. No injury because giving— goes to the merits of the fraud claim, not to the Article III standing issue. We've cited a number of cases in our brief that say that as a donor you don't have the ability, it doesn't give you a right and therefore an injury if it doesn't happen, to dictate how an organization runs itself. Particularly here where we're talking about a political organization with First Amendment rights. It would be true of all organizations, by the way. If the Democratic Party had said, hey, if you donate during these 72 hours where we really need money, that money is going directly into the Sanders campaign. And all the money that had been raised in those 72 hours went to the Clinton campaign. Would there be injury? I think that would be closer to injury, Your Honor. Why would that be closer? Because there's a—because you're basically—there's a closer tie between what has been said— What's the loss to each person in my hypothetical? They've lost their money to—they thought they were giving essentially to the Sanders campaign and the money was given to the Clinton campaign. Would they have an actionable claim in my hypothetical? I'm not sure, Your Honor. I'm not sure about that. It would depend on exactly what was said. I told you what was said. Every cent donated during this 72-hour period goes to the Senator Sanders campaign, every single cent. And it turns out that all of the money, every single cent goes to the Clinton campaign. Do they have a fraud claim? I think they might. I think they might. Do they have injury in fact? They might. They might, Your Honor. What do you mean might? But I think that's very different from what happened. No, no, no, no, no. We're going to stick on the hypothetical. And I know it's a hypothetical. I know it's not this case. No. How can that case not provide Article III standing for a fraud claim regardless of whether you think the fraud claim loses on the merits on a 12B6 motion? If you think that there's no standing, tell me why not. Well, I think if someone is told give me your money and I'm going to put it to a certain use, I'm going to give it to the Sanders campaign and the money is literally diverted to the Clinton campaign, that is essentially you're procuring the money by fraud. So there is standing in that case. I think there likely would be, yes. I think that's quite different from what we have here. I know. To build on that analogy, I want to make sure you close it out. Say that there is one scenario like the one just described. There's a specific representation. We will give this money to the Sanders campaign and people donate. You agree that there would be standing there if the money instead went to the Clinton campaign, right? Likely, yes. What if on a different telethon they said give us money and we will give it to the very best Democratic candidate? Does that make it – and then someone who supports Sanders says, well, Sanders was obviously the best Democratic candidate and you gave it to Clinton. Does that present a different kind of injury situation in your view? I think so. I think it would be almost impossible to show injury there because you're essentially leaving it to the discretion of the party to determine who to give the money to. And so there wouldn't be an injury and you couldn't show reliance and you couldn't show causation. And that's true even though the person is out of their money in either instance? Yes, I think that's right. Now, of course, here you also have massive causation problems, which I think I've probably already discussed enough, and redressability, which would then bring this court into questions that go to the heart of the party's First Amendment rights and is non-justiciable under this circuit's precedent under the Whims v. Republican Executive Committee of Florida. If there are no further questions, Your Honor, I'll wrap up. Thank you very much. We appreciate it. Sir Beck, you're back on the hot seat or podium. Okay. Your Honors, one issue that I don't know if it got as developed as it could be in our brief, but I think is very, very important is the issue of Rule 12G2, which prohibits a party that makes an initial motion to dismiss from making a second motion to dismiss that asserts grounds that were available to it in its original motion. With regard to that argument, you cited authority in your reply brief for that proposition, but there's a fair amount of contrary authority too, right? Well, I shepherdized it last night, and it seems to me from what I saw in the case laws that the Eleventh Circuit has not ruled specifically on 12G2 in the way that the Fourth Circuit and the Sixth Circuit have ruled, and they're somewhat at odds. And then there's a very recent Ninth Circuit case. I think it's In-Ray iPad or some Apple product of some sort, which truthfully I can't remember which side it took in the dispute. My point on 12G2 is that I think the statute speaks for itself in this particular instance. It states specifically that a 12B6 motion or 12B6 grounds cannot be alleged in the successive motion. They may be brought by judgment on the pleadings or on summary judgment or a trial, but I think the statute is very, very specific about not allowing the court to consider 12B6 grounds that are brought in a successive motion to dismiss. In this case, the defendants originally dismissed for insufficient service of process. Those are the only grounds that they raised. Didn't they also request additional time to be able to brief the merits in that motion? I believe they did, Your Honor. Without objection from the plaintiffs? Well, there was no objection from the plaintiffs, but I don't know that not objecting to that and the fact that they never actually did file an addendum to that motion before the hearing was heard on our process issue, I don't know that that gets them out of what the rule expressly requires, which is that they would have had to bring the 12B6 grounds in connection with their service of process grounds in order to bring those on a motion to dismiss. But if they can raise them on a motion for judgment on the pleadings, as one of the circuits has explained, why shouldn't we address those issues now? If not, what's going to happen is if some of your claims survive, goes back down, they'll file a motion for judgment on the pleadings, and the district court's going to rule, and if it rules adversely to you, we'll be back up here again. Well, two responses to that, Your Honor. First response is that the judgment on the pleadings is going to be a procedurally different vehicle and in a substantially different posture because they'll have raised, presumably raised, affirmative defenses and answered or denied, certainly, the allegations. You can't get a motion for judgment on the pleadings on your complaint on an affirmative defense. Understood, Your Honor, but it will be in a procedurally different posture, and I think that's what the intent of the rule is. Secondly, and we raised this in our briefs, but I'll just reiterate it now, we never had a chance to amend the substantive allegations prior to the court's dismissal. We amended one time as of right to dismiss certain of the plaintiffs, but we never amended the allegations, and in a case such as this one, given that and especially with respect to the 12B6 issues, I would think that plaintiff ought to be afforded at least one opportunity to amend for the reasons that we said. Did you request permission to amend? No, Your Honor, we didn't request permission to amend. Why does the trial court have the responsibility to offer you permission to amend rather than waiting for you to ask for it? Well, because it entered a final order of dismissal, which effectively left us no avenue but to appeal the order. It should have conducted and never did conduct the analysis of whether amendment would be futile in this case, which I think is especially important because as Judge Jordan recognized, there was some overflow between the analysis that's more appropriate at the 12B6 stage and what was strictly set forth in the court's order, which was an analysis of Article III standing. But I thought that this – no, I'm sorry. Go ahead. I was moving to something else. If you have a follow-up to that, go ahead. I do have a quick follow-up. Didn't the district court dismiss without prejudice? I believe it – For lack of subject matter jurisdiction as it had to given its ruling on standing? Correct. I think the without prejudice language is tied to the fact that it was a dismissal for lack of subject matter jurisdiction. But I think if – But that let you request leave to amend after that, did it not? No, I don't believe so. I think we cited a case that was fairly similar in our brief, but I think that the fact that it was titled a final order of dismissal made it clear that the dismissal of the complaint was also a dismissal of the action. So that would have made any request on our part to amend the complaint inappropriate. Okay. Go ahead. I'd like to ask you the same question I asked your friend at opposing counsel's table, which is this. If the Democratic Party had done a telethon and said, please donate to us during these 72 hours and we will give it to the best possible Democratic candidate, if your clients thought that Bernie Sanders was the best candidate and the DNC had contributed to Secretary Clinton's campaign, would they have injury with respect to the donations that they made during that 72 hours? I think for purposes of the Article 3 analysis, we would have injury because we would be able to allege that we made a donation in reliance on a statement that we believe to be misleading. I don't know that that would be the same for a 12B6 analysis, though. In other words, you might have standing, but you'd probably fail on the merits because you couldn't show reasonable reliance on a statement that was materially false and related to an issue of fact. Right. I think best candidate possible is analogous to sort of what's called puffery in the advertising context. I think impartial and evenhanded, which is the crux of the statements at issue here and the DNC's charter obligation, are of a much different order. I know my friend on the other side suggested that maybe there is not such a difference in that we really can't understand what impartial and evenhanded are, but I submit that the courts of our country rely on understanding what that means every day when they adjudicate disputes. So I don't think it would be any different for a court to understand how those very same terms apply in the conduct of an election. Okay, Mr. Beck, thank you very much. Thank you both. Thank you.